Bruce D. WELLMAN, Petitioner,

v.

STATE OF MAINE, Respondent.

No. 91–0143–P.

United States District Court,
D. Maine.

Aug. 1, 1991.

David P. Silk, Portland, Me., for petitioner.

Joseph Wannemacher, Asst. Atty. Gen., Crim. Div., Augusta, Me., for respondent.

## MEMORANDUM OF DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GENE CARTER, Chief Judge.

Petitioner Bruce Wellman petitions for a writ of *habeas corpus* on the grounds that

he was induced to make unknowing and involuntary guilty pleas in Maine Superior Court. The following facts are undisputed. Petitioner was brought from New Hampshire and confined in the Cumberland County, Maine jail from May 23, 1985 to November 20, 1986 while he was being tried for burglary, theft, and robbery. This confinement was in service of sentences imposed on Petitioner by New Hampshire pursuant to the Interstate Compact on Detainers. 34–A M.R.S.A. §§ 9601–9636. On September 26, 1986, Petitioner pled guilty in Maine Superior Court to thirty-four separate counts of burglary, theft, and robbery. Petitioner's guilty pleas were offered consistent with a plea agreement which resulted in his being sentenced on April 8, 1987 to twenty years of imprisonment, with all but nine years of the sentence suspended, with three years of probation.

Prior to Petitioner's sentencing, the Cumberland County District Attorney provided a formal statement indicating that Petitioner had been detained in Maine for 686 days. Petitioner was initially given pretrial detention credit for the full period served. After Petitioner's plea had been entered, the sentence had been imposed, and Petitioner had initiated a postconviction challenge, Maine's Attorney General noted that Petitioner was not entitled, under 17–A M.R.S.A. section 1253(2),[1] to credit for the time he had served in execution of the New Hampshire sentence. As a result, Petitioner was credited with only 140 days. Petitioner challenges the reduction in days credited on three grounds: (1) the state's failure to give Petitioner full credit violated the plea agreement, or the state created a plea agreement with which it could not comply; (2) Petitioner's guilty plea was not made voluntarily; and (3) the state gave Petitioner false information about the terms of the plea agreement entered into with one of Petitioner's codefendants.[2]

Petitioner's first step in this matter was a postconviction challenge in Maine Superior Court. Superior Court Justice Fritzsche held that while there was no agreement between Petitioner and the state with respect to the status of the credits, Petitioner and his counsel harbored the objectively reasonable expectation that the full 686 days would be credited against the sentence imposed pursuant to the plea agreement. *Wellman v. State of Maine,* Docket No. CR–88–1274, slip op. at 3–4 (Me.Super.Ct., Cum.Cty., Apr. 20, 1990). For this reason, Justice Fritzsche held that Petitioner's guilty pleas were involuntary, and that he should be permitted to withdraw the pleas. *Id.* at 4–5. The Maine Law Court reversed Justice Fritzsche's grant of Petitioner's petition for postconviction relief on the grounds that the amount of credit to which Petitioner was entitled was a collateral consequence of the guilty plea. *Wellman v. State of Maine,* 588 A.2d 1178 (Me.1991). Since Petitioner need not be informed of all collateral consequences prior to entering his plea, *id.* at 1181 (citing, *inter alia, United States v. Bouthot,* 878 F.2d 1506, 1511–12 (1st Cir.1989)), the Law Court concluded that, in the absence of an agreement or a misrepresentation by the state, Petitioner's guilty plea was voluntary and he was not entitled to withdraw his pleas. *Id.*[3]

■ Federal courts reviewing state court convictions are limited to determining

---

1. The relevant portion of this provision reads:
 2. Each person sentenced to imprisonment who has previously been detained for the conduct for which the sentence is imposed in any state correctional facility or county institution or facility or in any local lockup awaiting sentencing or post-sentencing prior to the date on which the sentence commenced to run ... *and not in execution of any other sentence of confinement,* shall be entitled to receive day-for-day reduction from the total term of imprisonment required under that sentence.
 17–A M.R.S.A. § 1253(2) (emphasis added).

2. Petitioner does not object to the legal conclusion that section 1253(2) prohibits crediting Petitioner with the time he has served in execution of his New Hampshire sentence.

3. The Law Court opinion is grounded in an interpretation of Maine Rule of Criminal Procedure 11, which sets forth the prerequisites for a Maine court's acceptance of a guilty plea. *See id.* at 1180–81 & n. 9. This Court is required to undertake a fresh constitutional review of Petitioner's challenges.

whether a federal constitutional violation occurred: "the fact findings of state courts are entitled to a presumption of correctness unless they are not fairly supported by the record." *Nelson v. Callahan*, 721 F.2d 397, 399 (1st Cir.1983). The present record fully supports the conclusion reached by Justice Fritzsche, and affirmed by the Law Court, that Petitioner did not satisfy his burden of establishing that the plea agreement, or an agreement collateral to the plea agreement, bound the state to provide Petitioner with a specific number of credited days. This finding of fact dispenses with both components of Petitioner's first claim: (1) the plea agreement was violated, and (2) the state entered into an unfulfillable plea agreement. Both of these challenges must fail in the absence of an agreement on the number of credited days.

 The Court is not required, however, to defer to either of the differing *legal* analyses employed by the Superior Court and the Law Court in response to Petitioner's second claim. The Law Court was correct in its conclusion that the number of credited days to which Petitioner was entitled was a collateral consequence, rather than a direct consequence, of his guilty plea. *Bouthot*, 878 F.2d at 1511. This distinction is helpful, however, only for determining whether a criminal defendant's rights have been violated by *a failure to inform the defendant of a particular consequence of his guilty plea.* The direct/collateral distinction bears little relevance when the state has provided a defendant with inaccurate information. Misinformation rising to the level of a misrepresentation by the state may be a constitutional infirmity even when it relates to a collateral consequence of the defendant's guilty plea. *See Bouthot*, 878 F.2d at 1512 (drawing a distinction between a prosecutor omitting information and a prosecutor providing inaccurate information); *Cepulonis v. Ponte*, 699 F.2d 573, 577 (1st Cir.1983) (same).[4]

 In the present case, the state informed Petitioner and the sentencing court that 686 creditable days had accrued. Justice Fritzsche found, and the record reflects, that Petitioner and his attorney relied on this representation by the state when they entered into the plea agreement. In sum, this case involves misinformation

---

**4.** Respondent, relying on the following language from *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), argues that Petitioner's challenges may be considered only in the context of an ineffective assistance of counsel claim:

> Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 [90 S.Ct. 1441, 1449, 25 L.Ed.2d 763] (1970). As we explained in *Tollett v. Henderson*, 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* at 267 [93 S.Ct. at 1608.]

*Id.* at 56–57, 106 S.Ct. at 369. Respondent reads this language out of context and too broadly.

The sentence preceding the above quotation makes clear that the only claim asserted by the criminal defendant in *Hill* in support of his assertion that his guilty plea was involuntary was a claim of ineffective assistance of counsel. *Id.* at 56, 106 S.Ct. at 369 ("petitioner relies entirely on the claim that his plea was 'involuntary' as a result of ineffective assistance of counsel because his attorney supplied him with information about parole eligibility that was erroneous"). Petitioner properly points out that both *Hill* and *Tollett v. Henderson* involved claims that a criminal defendant's counsel either gave bad advice or failed to provide information to the defendant. Further, the actual holding in *Hill* was that "the two-part *Strickland v. Washington* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] test applies to challenges to guilty pleas *based on ineffective assistance of counsel*." *Id.* at 58, 106 S.Ct. at 370.

*Hill* does not require that all *habeas corpus* claims by criminal defendants who were represented by counsel be shoehorned into a Sixth Amendment ineffective assistance of counsel analysis. Rather, *Hill* requires that criminal defendants who raise ineffective assistance of counsel claims satisfy the standards set forth in *Strickland v. Washington* and *McMann v. Richardson*. Petitioners claim in this case is that *the state* provided inaccurate information upon which Petitioner and his counsel relied. *Hill* cannot be fairly read to hold that effective assistance of counsel is a panacea for prosecutorial misrepresentations, misinformation, or misconduct.

provided by the state rather than the absence of collateral information. The Superior Court erred, however, when it concluded that Petitioner's *habeas corpus* petition should necessarily be granted as a result of its finding that Petitioner had relied on the state's misinformation. Petitioner must also establish that he suffered prejudice as a result of the state's provision of incorrect information. *Cepulonis,* 699 F.2d at 577.

 Petitioner's only argument in support of his claim of prejudice was: "What could be more prejudicial than entering into a plea agreement, receiving what one expects to receive, and then having a significant part of what one received taken away unilaterally five months after sentencing." Transverse to Respondent's Answer at 13 (Docket No. 5). The dashing of Petitioner's expectations, even though they were built on the state's misrepresentations, is not sufficient to constitute prejudice. *See Littlefield v. Caton,* 856 F.2d 344, 346 (1st Cir.1988). Rather, Petitioner must demonstrate that he would not have pled guilty if the state had accurately informed him of the number of credited days. *Cepulonis,* 699 F.2d at 577. Expectations are relevant only when a defendant can show that the expectations were a significant foundation for his guilty plea; that is, absent the expectations, he would not have plead guilty. Petitioner does not claim that he would have withheld his guilty plea in the face of accurate information. Further, the Court finds that the record could not support such a conclusion. In sum, Petitioner's guilty plea was not involuntary and Petitioner's second challenge must fail.

 Finally, Petitioner claims that the state failed to disclose an unwritten plea agreement with John Bedard which resulted in Bedard receiving a smaller sentence than he would have received under the written agreement disclosed to Petitioner's counsel.[5] Petitioner's third claim fails for the same reason his second claim failed. Petitioner has not alleged, and the record

---

5. Justice Fritzsche did not reach this issue because he granted the petition on other grounds. The Law Court addressed this issue in a footnote, and held that Petitioner did not allege "a

does not establish, that the state's failure to produce Bedard's unwritten plea agreement resulted in any prejudice to Petitioner. As a result, Petitioner's third challenge must also fail.

Accordingly, the Court hereby DENIES Bruce Wellman's petition under 28 U.S.C. section 2254 for a writ of *habeas corpus* by a person in state custody.

So ORDERED.

sufficient nexus between his plea and that of the co-defendant to make co-defendant's case relevant to [Petitioner's plea]." *Wellman v. State of Maine,* 588 A.2d at 1179 n. 5.